IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEPHEN RAHER,

                  Plaintiff,                    CV-09-526-ST

        v.                           OPINION AND ORDER

FEDERAL BUREAU OF PRISONS,

                  Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Stephen Raher ("Raher"), brought this action under the Freedom of Information Act ("FOIA"), 5 USC § 552, to obtain documents from defendant, the Federal Bureau of Prisons ("BOP"). The court has jurisdiction under 5 USC § 552(a)(4)(B). BOP has filed a Motion for Summary Judgment (docket # 28), and Raher has filed a cross Motion for Partial Summary Judgment (docket # 33). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

1 - OPINION AND ORDER

At the hearing on June 1, 2010, the court made rulings on portions of the pending motions. For the following reasons, the BOP's motion is denied and Raher's motion is deferred.

## STANDARDS

FOIA sets forth a policy of broad disclosure of government documents in order to "ensure an informed citizenry, vital to the functioning of a democratic society." *FBI v. Abramson,* 456 US 615, 621 (1982), quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 US 214, 242 (1978). It enables the public to scrutinize agency action so that the government can be held accountable to the governed for its decisions. *Robbins Tire & Rubber Co.*, 437 US at 242.

Despite a strong presumption in favor of disclosure, FOIA recognizes that a limited class of sensitive government documents may legitimately be kept from the public. *Lahr v. NTSB,* 569 F3d 964, 973 (9th Cir 2009). FOIA lists nine statutory exemptions. 5 USC § 552(b)(1)-(9). Unlike the disclosure provisions of FOIA, the statutory exemptions must be narrowly construed. *Lion Raisins v. U.S. Dep't of Agric.*, 354 F3d 1072, 1079 (9th Cir 2004).

FOIA places the burden on the agency to sustain withholding requested information. 5 USC § 552(a)(4)(B); *Lion Raisins*, 354 F3d at 1079. The agency may satisfy this burden by submitting an index supported by affidavits or declarations that describe the withheld material in reasonable detail and explain why it falls within the claimed FOIA exemption. *Ctr. for Pub. Integrity v. Dep't of Energy*, 191 F Supp2d 187, 190-91 (D DC 2002). Such a description, known as a Vaughn index, must "identify each document withheld, the statutory exemption claimed, and a particularized explanation of how the disclosure of the particular document would damage the interest protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F3d 1325, 1326 n1 (9th Cir 1995); *Bowen v. US Food & Drug Admin.*, 925 F2d 1225, 1227 n1 (9th Cir 1991), adopting

*Vaughn v. Rosen*, 484 F2d 820, 828 (DC Cir 1973). Specificity is the defining requirement of a Vaughn index. *Weiner v. FBI*, 943 F2d 972, 979 (9th Cir 1991).

Where the pleadings and affidavits or declarations show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is the appropriate mechanism for resolving a FOIA disclosure dispute. *Ctr. for Pub. Integrity*, 191 F Supp2d at 191. The district court may not rely on affidavits or declarations that are conclusory and fail to describe the justification for withholding requested records "in sufficient detail to demonstrate that the claimed exemption applies." *Id*, quoting *Carter v. Dep't of Commerce*, 830 F2d 388, 392 (DC Cir 1987).

## UNDISPUTED FACTS

BOP requested proposals for contracts to provide, maintain, and operate private detention facilities for foreign nationals serving criminal sentences imposed by the federal courts. These solicitations were known as Criminal Alien Requirement ("CAR") Phases 1, 2, 5, and 6. In response, five entities engaged in the private prison industry submitted proposals and supporting documentation to BOP. The five entities (collectively "submitters") are Corrections Corporation of America ("CCA"), Cornell Companies, Inc. ("Cornell"), LCS Corrections Services, Inc. ("LCS"), Management & Training Corporation ("MTC"), and Reeves County, Texas ("Reeves County").

In November 2008, Raher submitted his FOIA request for records maintained by BOP pertaining to the solicitation, evaluation, and award of contracts under the pertinent CAR solicitations. His FOIA request identified the following five categories of records:

Item 1.    Any award announcement and contract awarded as a result of Solicitation RFP-PCC-0005 ("Criminal Alien Requirement, Phase 1," announced in *Commerce Business Daily* on August 10, 1999).

Item 2.        Any award announcement and contract awarded as a result of Solicitation RFP-PCC-0006 ("Criminal Alien Requirement, Phase 2," announced in *Commerce Business Daily* on April 5, 2000).

Item 3.        Any correspondence regarding the solicitation, evaluation, or issuance of Awards DJB1PC003 and DJP1PC007, to Reeves County (arising out of RFP-PCC-009, and RFP-PCC0010, respectively).

Item 4.        Any contract awarded as a result of RFP-PCC-009 ("Criminal Alien Requirement, Phase 5").

Item 5.        Any contract awarded as a result of RFP-PCC-0010 ("Criminal Alien Requirement, Phase 6").

In June 2009, BOP conducted an initial search for responsive documents, notified the submitters of this FOIA request, and gave the submitters an opportunity to object to disclosure. BOP received written and oral objections to the release of records from the submitters, including a renewed written objection that CCA had previously submitted to a previous FOIA request for the awarded contract. Tufte Supp. Decl., ¶ 3 & Ex. 1.  In July 2009, BOP provided Raher with 17 documents comprising 1,764 pages.  BOP redacted information from these documents and provided Raher with a Vaughn index describing each responsive document and briefly stating the statutory FOIA exemptions claimed for withholding redacted information ("Vaughn Index" or "VI").  *Id*, Ex. 2.  The responsive documents identified in the Vaughn Index are contracts awarded by BOP under CAR Phases 1, 2, 5, and 6.

After the parties conferred and clarified Item 3 of the FOIA request, BOP conducted another search which revealed approximately 8,000 additional pages of responsive records.  In November 2009, BOP provided Raher with 2,056 of those pages with information redacted.  BOP withheld the remaining documents, comprising approximately 6,000 pages.  BOP produced a supplement to the Vaughn Index identifying each document determined to be responsive to Item 3 of the FOIA request

and stating the basis for withholding or redacting information from the document ("Supplemental Vaughn Index" or "SVI").  Tufte Supp. Decl., Ex. 3.  The responsive documents described in the Supplemental Vaughn Index are proposals and supporting documents provided to BOP by the submitters in response to the CAR Phases 5 and 6 solicitations for contract proposals.

The proposals described in the Supplemental Vaughn Index include several types of documents.  Each proposal included documents reflecting the submitter's initial offer, revisions, and final offer, past performance records including past or existing contracts provided to demonstrate the submitter's experience and ability to perform similar contracts, a technical proposal for performing the requirements of the contract, and environmental documentation required under NEPA.  Raher Decl., Ex. F, pp. 1-3; Tufte Decl., ¶¶ 5-6.  During oral argument on the pending motions, BOP agreed to make the environmental documentation in the submitters' proposals available to Raher.  Those records are not addressed in this opinion.

## DISCUSSION

I.    **BOP's Motion for Summary Judgment**

BOP moves for summary judgment because the Vaughn Index, Supplemental Vaughn Index, declarations, and affidavits establish adequate bases for withholding responsive records under Exemptions 2 and 4 of FOIA.  5 USC §§ 552(b)(2), (4).

Raher responds that the descriptions in the Vaughn Index, Supplemental Vaughn Index, declarations, and affidavits are not sufficient to provide the court with an adequate foundation to review whether BOP properly applied  Exemption 2 or Exemption 4.  In addition, Raher contends that BOP has not asserted a statutory FOIA exemption for withholding records concerning past

performance or technical proposals.  Accordingly, he argues that factual questions remain to be resolved.

In addition, Raher argues that BOP failed to conduct an adequate search because the Vaughn Index, Supplemental Vaughn Index, affidavits, and declarations are silent regarding bid evaluation activity.  At the hearing on the motions, this court required BOP to determine whether it had searched for bid evaluation information responsive to Item 3 of Raher's FOIA request.  BOP has not responded to that order.  Accordingly, BOP's motion for summary judgment is denied as to any records reflecting bid evaluation.

## A.    <u>Exemption 2</u>

BOP invokes the "High 2" category of FOIA Exemption 2 which exempts records that are "related solely to internal personnel rules and practices," disclosure of which "may risk circumvention of agency regulation."  5 USC § 552(b)(2); *Milner v. US Dep't of the Navy*, 575 F3d 959, 963-64 (9th Cir 2009), *cert granted*, 130 S Ct 3505 (2010), quoting *Dep't of the Air Force v. Rose*, 425 US 352, 369 (1976).  The first part of this test requires a showing by the agency that the disputed document or information is used predominantly for internal purposes; the second part requires the agency to prove that disclosure would present a serious risk of circumvention of agency regulations, statutes, or other legal requirements.  *Milner*, 575 F3d at 963-64, 971-72, adopting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F2d 1051, 1074 (DC Cir 1981).  The court must look to the agency's Vaughn index and affidavits for sufficient information and detail to show that the content of the document sought to be withheld meets both parts of this test.

BOP redacted information from five pages of a document identified in the Supplemental Vaughn Index as Part 4 of the Cornell Proposal for CAR Phase 6 ("SVI 10").  Tufte Supp. Decl.,

Ex. 3, p. 6.  Similarly, BOP redacted information from five pages of a document identified as Part 4

of the Reeves County I & II CAR 6 proposal ("SVI 35").  *Id* at 22.  BOP gave the following reason

for redacting information from these two documents:

> [T]he release could risk circumvention of security at the prison, by
> allowing inmates and others to learn key components and operating
> procedures for the computers, including setup and firewall protection
> requirements.

*Id* at 6, 22.

BOP withheld the entirety of Parts 6 through 13 of the Cornell CAR 6 proposal.  ("SVI 12-

19").  *Id* at 7-14.  These documents are identified as "a series of contract documents" submitted  by

Cornell "to establish that they have performed similar contracts within the past three years."  *Id* at

7.  These past performance records include eight documents comprising over 600 pages.  The BOP

gave the following alternative reasons for withholding the entirety of these documents:

> The redactions . . . are either (1) specific documents or specific
> sections of these contracts which contain confidential business
> information, the release of which would be substantially harmful to
> Cornell's competitive position, or (2) documents containing
> information which poses a security concern for the particular
> customer for that contract, such as the state government of California,
> Georgia, and Oklahoma.  These pages were withheld in full under
> (b)(2) as the release could risk circumvention of security at the
> prison, by allowing inmates and others to identify staffing patterns,
> as well as security and operations information.

*Id.*

BOP withheld the entirety of two documents identified as the Reeves County III final

proposal revisions submitted for CAR Phase 5 ("SVI 46 & 47").  *Id* at 28.  These documents are

described as a "summary and detailed response to government procurement negotiations and

comprise the offeror's revisions" and as including "other client contracts." *Id.* BOP withheld the

entirety of both documents under Exemption 2 for the following reason:

> [T]he release could risk circumvention of security at the prison, by
> allowing inmates and others to identify staffing patterns, as well as
> security and operational information. Information protected includes
> post assignment schedule detail for a contract listing the specific
> position classifications and rotations of employees at the facility
> under contract. The information redacted also includes prisoner
> capacity of the facility and the dollar value and type of insurance
> coverage required under the contract.

*Id.*

These descriptions by BOP do not contain sufficient detail or information for the court to

determine whether the information is used predominantly for internal purposes by BOP, Cornell,

Reeves County, or any third party customers involved.[1] The contract documents do not appear to

be inherently internal documents, such as, for example, manuals or instructions used by prison staff

to guide practices and policies at the facilities. *See e.g. Dirksen v. U.S. Dep't of Health & Human

Servs.*, 803 F2d 1456, 1458-59 (9th Cir 1986) (Medicare claims-processing guidelines)*; Crooker*, 670

F2d at 1072-74 (contested portions of an ATF manual on raids and searches); *Hardy v. Bureau of

Alcohol, Tobacco & Firearms*, 631 F2d 653, 655 (9th Cir 1980)(same). BOP must show that the

contested information bears on interpretations or instructions involving internal matters of the

agency and was not written to regulate the public. *Crooker*, 670 F2d at 1073 citing *Vaughn v.

Rosen*, 523 F2d 1136, 1150 (DC Cir 1975) (Leventhal, J., concurring).

Furthermore, the descriptions fail to provide sufficient information about the content of the

documents to permit the court to determine whether disclosure reasonably presents a legitimate,

---

[1] Raher concedes that this exemption may cover internal information of a private contractor operating under supervision of any agency, including private prison contractors operating detention facilities under BOP's supervision.

serious risk of circumvention.  For example, disclosing "key components and operating procedures for the computers" could conceivably invoke security concerns, but it is not at all clear how.  Similarly, disclosure of certain "staffing patterns," such as the specific number of guards in a specific location at a specific time, could present a security risk, but more general staffing patterns, such as total number of guards employed in a facility, likely does not.  The conclusory statements that a security risk exists categorically for all information related to staffing, computers, security, and operations does not provide the specificity needed to satisfy the agency's burden of proof under FOIA.

In addition, the alternative reasons offered for Cornell's past performance records is problematic.  BOP's failure to associate the precise reason for nondisclosure with specific documents or parts of documents compromises Raher's ability to advocate for release of that information.  *Wiener*, 943 F2d at 979.  An agency must correlate a theory of exemption with the particular textual segment of a document to which it applies.  *Schiller v. Nat'l Labor Relations Bd.*, 964 F2d 1205, 1209-10 (DC Cir 1992); *King v. U.S. Dep't of Justice*, 830 F2d 210, 224 (DC Cir 1987).

Because the descriptions are insufficient to permit the court to effectively and efficiently evaluate the factual nature of the disputed information, BOP has not satisfied its burden of proof.  *Vaughn*, 484 F2d at 826.  Accordingly, BOP's motion for summary judgment is denied as to the material withheld under Exemption 2.

**B.     FOIA Exemption 4**

FOIA Exemption 4 protects from disclosure commercial or financial information that is confidential.  Such information falls within Exemption 4 if disclosure would either lessen the

likelihood of future voluntary sharing of similar information by similar sources or cause substantial harm to the competitive position of the submitter of the information. *GC Micro Corp. v. Def. Logistics Agency*, 33 F3d 1109, 1113 (9th Cir 1994), adopting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F2d 765, 770 (DC Cir 1974) (*Nat'l Parks I*); *Frazee v. US Forest Serv.*, 97 F3d 367, 371 (9th Cir 1996).

If the withheld information was provided voluntarily, then the government has an interest in protecting confidentiality to ensure that similar sources of information will cooperate and provide similar information in the future. Here, the submitters did not voluntarily provide information to BOP, but instead provided it as a mandatory requirement of compliance with the CAR procurement process. Presumably, therefore, there is no danger that public disclosure will impair BOP's ability to obtain similar information in the future. *Nat'l Parks I*, 498 F2d at 770.

Where information is required to be submitted to the government, it is confidential for the purposes of Exemption 4 if disclosure is likely to cause substantial harm to the competitive position of the party from whom the information was obtained. *McDonnell Douglas v. US Dep't of the Air Force*, 375 F3d 1182, 1187 (DC Cir 2004); *Nat'l Parks I*, 498 F2d at 770. The person seeking to withhold the information must establish both actual competition in the relevant market and a likelihood of substantial competitive injury if the information is released. *Lion Raisins*, 354 F3d at 1079; *GC Micro Corp.,* 33 F3d at 1112-13.

Under Exemption 4, BOP redacted pricing information. Pricing information shows how BOP decides to spend funds appropriated from the taxpayers to pay for detention facilities and services purchased from these companies. Disclosure of such pricing information would permit public scrutiny of the wisdom and efficiency of BOP's decisions and of the value received by

taxpayers for these federal expenditures of taxpayer funds.  To the extent releasing the pricing information does not cause substantial competitive harm, its disclosure would further congressional intent in passing FOIA.  *GC Micro Corp.*, 33 F3d at 1113.

### 1.   Actual Competition

BOP has not produced sufficient evidence of actual competition in the marketplace for  the private detention of foreign nationals.  In a letter dated March 2, 2007, CCA asserted that actual competition is shown by the number of contractors responding to BOP's solicitations for contracts:

> CCA is operating in a competitive marketplace with substantial competitors bidding on every new federal private prison project and re-bids of existing contracts.  CCA faces meaningful day-to-day competition with businesses offering similar services.  Disclosure of this information would provide CCA's competitors with valuable insights into CCA's strengths and weaknesses in its winning bid responses in this section of their submittal.

Tufte Supp. Decl., Ex. 1, p.  3.

The proposals and contracts at issue include pricing terms for a four-year base period and for option years which BOP may exercise to extend the contract beyond the base period.  Raher Decl., Ex. C, p. 1.  The reference to re-bidding existing contracts presumably refers to the potential that BOP may solicit new bids instead of exercising option-year pricing under the existing contracts.

CCA's conclusory assertions are not supported by the record as a whole.  BOP is the only customer in the relevant market, and the submitters are among a small number of entities, perhaps the entire universe of such entities, that meet the solicitation criteria for the CAR procurement process and are capable of supplying BOP with the facilities and services required.  The procurement process imposes barriers to entry for new competitors in the market.  The CAR solicitations are open only to contractors with existing facilities which necessarily limits the universe of competing bidders to prison operators with excess capacity in existing facilities.  In addition, the

solicitation criteria require each bidder to establish that it has performed similar contracts within the preceding three years, further impeding new competitors from entering the relevant market.

Nor does the CAR procurement process appear to be competitive in practice. The Supplemental Vaughn Index identifies the proposals BOP received in response to CAR Phases 5 and 6, and the Vaughn Index identifies all the contracts resulting from those solicitations. Together they demonstrate that BOP awarded a contract for each bid it received. In other words, BOP has not shown that there were any unsuccessful bidders, that the submitters bid against each other, or that unidentified potential contractors exist that could compete in the CAR procurement process.

BOP also has failed to show competition in the contract renewal process. The record contains no evidence showing that submitters have been underbid by competitors in the renewal process or that BOP has declined to exercise the option year for any existing CAR contract. Raher Decl., Ex. K. There is no persuasive evidence that BOP considered competing bids when determining whether to exercise its option to renew an expiring CAR contract.

These circumstances suggest that the submitters do not engage in actual competition against each other. As Raher argues, it appears that the BOP may have simply divided the number of prison beds needed among the bids it received, such that each submitter having the capacity to provide the required detention facilities and services was awarded a contract, regardless of the differences, if any, in such competitive factors as price, operational plans, staffing formulas, and so forth. This suggestion is further supported by the complete absence of any records reflecting bid evaluation in which BOP considered such factors.

BOP has provided no support for CCA's contention that it faces day-to-day competition from businesses offering similar services. *See Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F2d 673,

682 (DC Cir 1976) (*Nat'l Parks II*) (concessioners within the national parks showed actual competition with hotels, restaurants, and gas stations in towns near the national parks). There is no evidence that businesses other than the submitters are qualified, available, and capable of providing services and facilities that would compete with the secure detention facilities and services already provided by the submitters to BOP or that the submitters even compete against each other in any significant way. In short, the record as it now stands, does not establish actual competition in the relevant market.

2.      **Substantial Competitive Injury**

BOP has also failed to satisfy its burden of proving a likelihood of substantial competitive injury to any submitter of the withheld information if that information is released. *Lion Raisins*, 354 F3d at 1079; *GC Micro Corp.,* 33 F3d at 1112-13. Conclusory or generalized allegations of competitive harm will not suffice. *GC Micro Corp.,* 33 F3d at 1113. BOP is not required to demonstrate with certainty that disclosure of the information would cause substantial competitive injury to the submitter of the information, but it must demonstrate that disclosure would be likely to do so. *McDonnell Douglas*, 375 F3d at 1187, citing *Nat'l Parks I*, 498 F2d at 770.

BOP redacted pricing information from nine contracts awarded to the five submitters (VI 1, 2, 3, 4, 5, 9, 11, 12, 15). Tufte Decl., Ex. 2. As noted previously, the contracts include pricing information for a base period and for option years which BOP may exercise to extend the contract beyond the base period. The Vaughn Index gives the following reason for exemption for each redaction:

> [T]he release could cause competitive harm to the submitter of the information. Release of such pricing information would cause substantial harm to the competitive position of the submitter on future

> bidding and would reveal elements crucial in determining the
> submitters pricing structure.

*Id* at 1.

BOP used the same conclusory language to justify its redaction of pricing information from the proposals offered by each submitter in response to the CAR Phases 5 and 6 solicitations. Tufte Supp. Decl., Ex. 3. This information includes proposed pricing in offers which produced the contracts just mentioned. It also includes pricing information from past or existing contracts submitted to establish that the submitter has performed similar contracts. Without further specificity, the assertion appears to be that all pricing information in existing contracts, and the proposals from which those contracts were derived, is categorically protected under Exemption 4. Such categorical and conclusory assertions do not provide the particularized explanation necessary to show that disclosure of a specific document or part of a document would damage the interest in private competition protected by Exemption 4. *Weiner v. FBI*, 943 F2d at 977, 979; *GC Micro Corp.,* 33 F3d at 1113.

With respect to certain proposal documents (SVI 1, 6, 7, 22, 25, 26 37, 41, 42, 45), BOP described the redacted line item price components of the overall bid price as follows:

> The information redacted is: (1) 100% Contract Beds, (2) the 115% Contract Beds, (3) the Monthly Ramp Up Price for the first year of the base period, (4) the Monthly Operating Price for each of the four base years, (5) the Fixed Incremental Unit Price (FIUP) Per Inmate Day for each of the four base years, (6) the total price for each of the four base years.

Tufte Supp. Decl., Ex. 3, p. 2.

With respect to several documents (SVI 4, 24, 26, 27, 45), BOP indicated that the redacted information includes cost figures paid to subcontractor vendors:

14 - OPINION AND ORDER

> Information withheld pertains to detailed pricing breakdown of the
> contract including components for different cost areas under the
> contract. Both the cost figures and the types of cost categories are
> confidential information. Information withheld pertains to specific
> subcontractors, including relationship with offeror, reasoning behind
> the specific subcontracting percentage goals, designation of inclusion
> or exclusion of indirect and overhead costs in calculation of
> subcontracting goals.

*Id* at 3.

BOP relies on the affidavit of Ben Erwin, an officer of Cornell, to further explain the

likelihood of competitive harm from disclosure of pricing information. Erwin refers, perhaps as a

representative example, to the pricing information in the contract between BOP and Cornell for

detention facilities and services at Big Springs Correctional Center. Tufte Decl., Attach. D, p. 3,

& Ex. 2, pp. 5-6; Erwin Aff., ¶¶ 6-9. He contends that the release of cost and pricing information

from Cornell's proposals and the contract subsequently awarded would significantly increase the

probability that Cornell's competitors could underbid Cornell in future bids for similar contracts.

Erwin Aff., ¶ 10. He does not explain, however, how a competitor could use the information from

past or existing contracts to underbid Cornell in the future.

Disclosure of a contractor's overall bid price during the bidding process would enable

competitors to underbid the contractor. Under such circumstances, the substantial harm to the

contractor's competitive position would be clear. Here, in contrast, the redacted pricing information

is from contracts that have been awarded in a bidding process that has been completed. The

potential harm is alleged only with respect to future bidding for future contracts and in potential

future rebidding of existing contracts which BOP may decline to extend under option-year terms.

In order to undercut a contractor's bid for a future contract, competitors would need sufficient information to predict the contractor's future bid.  Disclosure of the contractor's overall bid price from a past or existing contract would not provide an adequate basis to predict future bids without information showing how the contractor arrived at the overall bid price.  Theoretically, disclosure of the contractor's costs of materials and services, mark up, profit margin, and other factors used to determine its bid, would permit competitors to estimate the contractor's bid on a future contract. *McDonnell Douglas*, 375 F3d at 1195.  Without evidence and an explanation of the process by which a competitor could use specific information to gain such a competitive advantage, however, the alleged harm remains theoretical.

For example, in *Canadian Commercial Corp. v. Dep't of the Air Force*, 442 F Supp2d 15, 18 (D DC 2006), the submitter identified particular information it sought to protect from disclosure and provided evidentiary support and detailed analysis to assist the agency in determining whether information came within Exemption 4.  This included an explanation in detail, by way of a number of examples, of the process through which a competitor having the information sought to be protected from disclosure could reverse-engineer the contractor's prices and costs and predict its bid on a future contract.

There is no *per se* rule that constituent line item price components must be disclosed under FOIA.  *McDonnell Douglas*, 375 F3d at 1192.  However, a majority of courts faced with the issue have permitted release of such information.  *Id* at 1194-95 (Garland J. concurring in part, dissenting in part and collecting cases); *Ctr. for Pub. Integrity*, 191 F Supp2d at 194-95 (collecting cases). In *Pac. Architects & Eng'g, Inc. v. U.S. Dep't of State*, 906 F2d 1345, 1347 (9th Cir 1990),

the disclosure of unit price rates was upheld where the aggregate bid could be affected by a number of fluctuating variables so that competitors could not determine the contractor's probable bid on a future contract based solely on price. Similarly, in *GC Micro Corp.*, 33 F3d at 1114-15, the contractor opposing disclosure relied on conclusory statements of its officers and failed to show how analysis of data involving a number of fluctuating variables would provide competitors with an unfair advantage in future bidding.

Here BOP has not provided specific evidence demonstrating how any submitter's valuation methodology could be derived from the specific information it seeks to protect from disclosure. Instead BOP asserts blanket generalizations regarding categories of price and cost information. It gives no explanation of the process by which a competitor could gain unfair advantage from specific information it seeks to withhold. BOP does not account for fluctuating variables that may affect future contracts which could involve different facilities, different economic circumstances, and different subcontracting vendors in different locations. These fluctuating variables would render negligible any advantage a competitor could derive from disclosure of current contract prices, line item price components, or cost components in the existing contracts. In addition, the declarations show that price is only one factor that BOP considers in determining which proposed contract represents the best value. Tufte Supp. Decl., Exs. 1, 3; Erwin Decl., ¶ 11. Unless BOP can provide more specific evidence regarding each redaction and explain how a competitor could use the redacted information to inform its bidding in future competition for similar contracts, the alleged harm appears to be no more than a theoretical possibility.

BOP's justification for protecting option year prices from disclosure also has an apparent theoretical basis. BOP could decline to exercise its option to enforce the option year pricing terms

in a current contract and solicit new bids instead.  Disclosure of option year pricing terms, or information from which the option year prices could be determined, would enable competitors to induce BOP to forego its option to extend the contract and then undercut the current contractor's option price when BOP opens the contract to new bidding.  *See McDonnell Douglas*, 375 F3d at 1187-90.

However, nothing in the record demonstrates that this theoretical harm is likely.  The likelihood that BOP would decline to exercise an option in favor of a lower price is diminished by its need for continuity of operations and the significant costs of disruptions in continuity.  *See* 48 CFR 17.207 (requiring contracting officers deciding whether to exercise option to consider the agency's need for continuity of operations and the costs of disrupting operations.)  In the private prison context, these disruptions would include transporting the prison population from the original contractor's facility to facilities operated by the successful competing bidders in the hypothetical rebidding process.  To prevail in the rebidding process, the rival bidder would have to not only undercut the option price, but also cover the transaction costs of disrupting operations.  In addition, nothing would exclude the original contractor from participating in the rebidding process so that the rival bidder still would not know the precise bid to undercut.

BOP, as the party opposing disclosure, must demonstrate that disclosure will enable competitors to derive strategic information that is likely to cause the submitter substantial competitive harm.  *McDonnell Douglas*, 375 F3d at 1195 (Garland J. dissenting), citing *Nat'l Parks I*, 498 F2d at 770; *Lion Raisins*, 354 F3d at 1079.  BOP has failed to satisfy that burden.  Although it is the party best equipped to provide information about the frequency with which CAR contracts are extended for option years or rebid, it has not produced such evidence.  The court is left without

evidence of actual competition for the renewal of existing contracts and cannot determine whether it is likely that disclosure of option year pricing will result in rebidding.

In summary, BOP relies entirely on general, conclusory assertions of harm in the Vaughn Index, Supplemental Vaughn Index, CCA letter, and Erwin Affidavit. These conclusory and generalized assertions of harm are insufficient to satisfy BOP's burden of proving a likelihood of substantial competitive injury. Because BOP has not satisfied its burden of proof, its motion for summary judgment with respect to the information withheld pursuant to Exemption 4 is denied.

### C.   Past Performance Records and Technical Proposal Records

BOP did not disclose 12 documents (SVI 48, 49, 51, 52, 54, 55, 57, 58, 60, 61, 63, 64) estimated at over 4,000 pages, described in the Supplemental Vaughn Index as past performance records and technical proposal records. Tufte Supp. Decl., Ex. 3, pp. 29-40. The declarations do not indicate which FOIA exemptions BOP invokes as the basis for excluding these documents from disclosure. BOP must state the statutory exemption it claims for withholding each document or part of a document and provide a particularized explanation of how the disclosure of that document or part of a document would damage the interest protected by the claimed exemption. *Weiner*, 943 F2d at 977; *Vaughn*, 484 F2d at 828. BOP must correlate a theory of exemption with the particular textual segment of a document to which it applies. *Schiller*, 964 F2d at 1209-10; *King*, 830 F2d at 224. Because it has not done so, its motion for summary judgment with respect to these documents is denied.

### II.   Raher's Motion for Partial Summary Judgment

Raher concedes that issues of fact remain to be resolved before a determination can be made whether Exemption 2 applies to some of the documents withheld by BOP. With respect to the past

performance records submitted in Cornell's CAR 6 Proposal, however, Raher contends that Exemption 2 does not apply as a matter of law.  With respect to documents withheld under Exemption 4, Raher contends that the declarations and affidavits are sufficient to show that none of the documents BOP withheld contain information protected by Exemption 4 as a matter of law. Finally, Raher contends that none of the information submitted by Reeves County is protected by any FOIA exemption as a matter of law.  Accordingly, he seeks a judgment compelling BOP to produce the Cornell past performance records withheld under Exemption 2, all the information withheld under Exemption 4, and all the information submitted by Reeves County.

A.    **Exemption 2**

Raher contends that Cornell's past performance records fall outside Exemption 2 as a matter of law because they are not used predominantly for internal purposes by the agency, BOP has failed to articulate a legitimate threat to security that would result from disclosure, BOP's solicitations did not specifically request confidential information or promise to protect past performance records, and Cornell did not designate the past performance records as confidential or request protection from disclosure.

As discussed above, BOP has not submitted sufficient descriptions to permit the court to determine whether any specific part of the withheld material is used predominantly for internal purposes or would pose a legitimate security threat if disclosed.  However, that failure does not necessarily mean that Raher is therefore entitled to summary judgment.  As previously noted, some of the withheld documents may well be protected from disclosure by Exemption 2.

Raher's assertions regarding the expectation of confidentiality are not dispositive because they do not address the two prongs required for protection under Exemption 2.  He has cited no

authority for the proposition that an expectation of confidentiality is an additional requirement for nondisclosure under Exemption 2. Whether the submitters and BOP considered the information confidential does not show that the information was or was not used predominantly for internal purposes. It does not show that disclosure of the information would or would not pose a security risk. The court cannot resolve those factual issues based on the present record and must defer that determination until the record is more fully developed. Accordingly, Raher's motion for partial summary judgment is deferred with respect to the Cornell past performance records withheld under Exemption 2.

Raher also asserts that none of the Reeves County materials are exempt from disclosure because it is a political subdivision of Texas whose records are subject to state statutory provisions requiring public disclosure. Raher concedes, however, that Texas provisions permit withholding of *bona fide* security information such as material that would be exempt from disclosure under the High 2 category of FOIA Exemption 2. As already discussed, this court cannot ascertain from BOP's conclusory descriptions whether disclosure would result in a legitimate security risk. It may or may not. As discussed below, that determination should be deferred until BOP supplements its descriptions for Reeves County documents withheld under Exemption 2.

**B.    Exemption 4**

Raher argues that he is entitled to judgment as a matter of law with respect to the information withheld under Exemption 4. Although BOP has failed to prove the CAR procurement process involves actual competition or that disclosure of the information would likely result in substantial competitive injury to a submitter of the information, the evidence in the current record does not demonstrate that Raher is entitled to judgment as a matter of law. At this point, BOP has presented

only conclusions without the necessary specific factual support to withhold information under Exemption 4. It may or may not be able to provide adequate support.

Next, Raher argues that none of the redacted information in the proposals can be protected under Exemption 4 because the submitters waived any claim of confidentiality by failing to assert it during the bidding process. This argument fails because the test for confidentiality is not based on the subjective expectation of the submitter that the information is confidential, but is based on an objective evaluation of the likelihood of substantial injury to the competitive position of the submitter of the information. *Nat'l Parks I*, 498 F2d at 766-67, 770; *GC Micro Corp.*, 33 F3d at 1113.

Finally, Raher argues that the declarations and affidavit supporting BOP's motion are vague, generalized, and conclusory. Again, the court agrees with Raher's assessment, but cannot conclude that it entitles him to judgment as a matter of law. As discussed below, that determination should be deferred until BOP supplements its descriptions for documents withheld under Exemption 4.

### C.    Other Arguments

FOIA Exemption 3, 5 USC § 552(b)(3), recognizes that information may be specifically exempted by a statute other than FOIA, provided certain requirements are present. One such statute, the National Defense Authorization Act for Fiscal Year 1997, 41 USC § 253b(m), prohibits disclosure under FOIA of contractor proposals that are not incorporated into a contract between the agency and the contractor who submitted the proposal. In effect, it provides blanket protection for proposals of unsuccessful offerors.

At oral argument on the pending motions, Raher pointed out that many documents at issue in this case are incorporated by reference into the contracts and, therefore, do not fall within the

protection from disclosure of 41 USC § 253b(m).  *Ctr. for Pub. Integrity*, 191 F Supp2d at 191 n2.

Because their disclosure is permitted under 41 USC § 253b(m), Raher contends that they also should

be subject to disclosure under FOIA.  This argument cannot be sustained because BOP does not

assert Exemption 3 or 41 USC § 253b(m) as the basis for withholding the documents it has chosen

not to release.

Alternatively, Raher argues that because the documents are not protected from disclosure

by 41 USC § 253b(m), they also should not be deemed confidential information under FOIA

Exemption 4.  However, 41 USC § 253b(m) intersects with FOIA only to the extent it bars

disclosure of unsuccessful proposals.  It does not purport in any way to limit FOIA protection for

successful proposals.  In that regard, this court must look only to FOIA for the answer.

### D.    Deferral of Ruling

If this court concludes that BOP has not provided sufficient justification or explanation for

this court to adequately analyze the applicability of Exemptions 2 and 4, both parties suggest that

it should perform *in camera* review of all, or a sample of, the documents.  *See In Defense of Animals*

*v. U.S. Dep't of Agr.*, 501 F Supp2d 1 (D DC 2007).  However, an "[i]n camera inspection is not a

substitute for the government's burden of proof and should not be resorted to lightly due to the ex

parte nature of the process and the burden on the court."  *Lane v. Dep't of Interior*, 523 F3d 1128,

1136 (9th Cir 2008).  Even if this court were inclined to assume this burden, it lacks sufficient

knowledge concerning BOP's operations and procurement process to meaningfully interpret the

withheld documents under FOIA.  Raher also suggests that this court could release the documents

to him under a protective order.  However, that would place BOP in the untenable position of having

to enforce any violation of the protective order and claw back any unwarranted disclosure.

Alternatively, as a remedy for inadequate affidavits, an agency can be ordered to submit a more detailed explanation of the competitive harm or some other sufficient justification. *Nat'l Air Traffic Controllers Ass'n v. FAA*, 2007 WL 495798 at *4 (D DC 2007). This court deems that remedy to be appropriate in this case. As a result, BOP will be allowed 60 days to provide more specific explanation for withholding information under Exemptions 2 and 4. During that time, this court will defer a ruling on Raher's summary judgment motion. If BOP does not timely provide adequate information, then Raher's motion for summary judgment will be granted.

### <u>ORDER</u>

For the reasons given, BOP's motion for summary judgment (docket # 28) is DENIED and Raher's cross-motion for partial summary judgment (docket # 33) is DEFERRED. In addition, BOP is ordered to submit on or before November 5, 2010, days the following additional evidence and explanation for withholding information responsive to Raher's FOIA request:

1. State the precise reason for withholding each specific document or part of document withheld.

2. With respect to the information withheld under Exemption 2, describe with particularity how the information is used predominantly for internal purposes and explain how disclosure would present a serious risk of circumvention of agency regulations, statutes, or other legal requirements.

3. With respect to the information withheld under Exemption 4, provide evidence of actual competition in the relevant market for CAR contracts and CAR contract renewal and explain how disclosure of each document or part of a document withheld would be likely to substantially harm the competitive position of a specific submitter.

4.   With respect to the past performance records and technical proposal records, state the precise reason for withholding each document or part of a document and the FOIA exemption under which the withholding is justified.

If the BOP fails to submit this information, then Raher's motion for summary judgment will be granted.

DATED this 2nd day of September, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge