**DWIGHT C. HOLTON, OSB #09054**
United States Attorney
District of Oregon
**KEVIN DANIELSON, OSB #06586**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1000
FAX:  (503) 727-1117
        Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

STEPHEN RAHER,                                                    09-CV-526-ST

            Plaintiff,

        v.                                    DECLARATION OF MATTHEW D.
                                              NACE

FEDERAL BUREAU OF PRISONS.

            Defendant.

**KENT S. ROBINSON, OSB #09625**
Acting United States Attorney
District of Oregon
**KEVIN DANIELSON, OSB #06586**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1000
FAX:  (503) 727-1117
        Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**STEPHEN RAHER,**

                                                                        CV 09-526-ST

                    **Plaintiff,**          **DECLARATION OF MATTHEW D.**
                                            **NACE**

        v.

**FEDERAL BUREAU OF PRISONS.**

                    **Defendant.**

I,  Matthew Nace, declare and state as follows:

        1.       I am employed by Federal Bureau of Prisons (BOP).  My current position is

Chief of Acquisition Branch for the Federal Bureau of Prisons.  I have served in my current

position since April 30, 2007.  I have been employed by the BOP since November of 1990.

My office is physically located in Washington, D.C.  My major responsibilities are to ensure

staff within the Acquisition Branch provide goods and services to, and in furtherance of, the

PAGE - 1     **Declaration of Matthew Nace**
             *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

overall mission of the Bureau of Prisons, acquiring such goods and services in a timely manner, within Federal Statutory Regulations, and at the best value to the Government.

2.    Within the Acquisitions Branch, Privatized Corrections Contracting (PCC) is responsible for establishing contracts with providers to manage and operate private prison facilities for low-security, primarily criminal alien populations. PCC performs all contracting functions, from soliciting proposals to administering the contracts after award. Onsite Contracting Officers and BOP program staff work together at the private provider's prison to ensure the facility is operated within contract terms and conditions.  Central Office contracting staff support the contract administration effort of our onsite Contracting Officers and perform all pre-award and contract award functions for new private-prison procurement. PCC is also responsible for establishing and administering contracts for Transitional Drug Abuse Treatment. These contracts are awarded and administered by all contracting officers within the Section.

3. BOP has statutory requirements to comply with the Competition in Contracting Act of 1984. The BOP's acquisition objective is to maximize competition to the maximum extent possible when releasing solicitations for the management and operation of a correctional facilities housing low security, adult, non-U.S. citizen male inmates. Currently, the BOP routinely receives offers from up to six different providers as a result of solicitations for this type of services. Because the Federal Acquisitions Regulations (FAR) are very strict regarding the methods, solicitation, negotiations and  dissemination of

PAGE - 2    **Declaration of Matthew Nace**
        *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

information, acquisitions staff must ensure the integrity of the acquisition process is maintained. The regulations that govern the handling and safeguarding of contracting information include: 1) Federal Acquisition Regulations (FAR) 48 C.F.R. §15.306(e)(2), Limits on Exchanges, government personnel involved in the acquisition shall not engage in conduct that reveals an offeror's technical solution, including unique technology, innovative and unique uses of commercial items or any information that would compromise an offeror's intellectual property to another offeror; 2) FAR 48 C.F.R. §15.306(e)(3)– Limits on Exchanges, government personnel involved in the acquisition shall not engage in conduct that reveals an offeror's price without that offeror's permission; 3) FAR 48 C.F.R. §15.207(b), Handling Proposals and Information, proposals shall be safeguarded from unauthorized disclosure through the source selection process (See FAR 48 C.F.R. §3.104 regarding the disclosure, protection, and marking of contractor bid or proposal information and source selection information prohibited from disclosure of this information and 41 U.S.C. 423, Restrictions on Disclosing and Obtaining Contractor Bid or Proposal Information or Sources Selection Information); 4) FAR 48 C.F.R. § 15. 304, provides that past performance records a factor that must be considered in evaluation of competitive negotiation procurement; and 5) FAR 48 C.F.R. § 15.506, Pre-award, Award, Post-award, Protests, and Mistakes, specifically limits the information that can be released to unsuccessful bidder. By adhering to these procedures on confidentiality, the BOP is able to pursue competition to the maximum extent possible and make a contract award to the contractor representing the best value for the BOP and taxpayer. By doing so, the BOP achieves its objective and complies with the requirements of the Competition in Contracting

PAGE - 3    **Declaration of Matthew Nace**
　　　　　*Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

Act of 1984, as well as meeting the requirements of Federal Acquisition Regulation (FAR) Subpart 6.1, Full and Open Competition and Office of Federal Procurement Policy.

      4.     Criminal Alien Requirement (CAR) contracts are Firm-Fixed price, Performance-Based contracts, with incentives, for the management and operation of a correctional facility, housing a low-security, primarily non-U.S. citizen male inmate. Currently, the BOP has thirteen contracts. Prior to expiration, the BOP solicits and awards follow-on contracts to ensure continuity of services. The BOP releases a CAR solicitation for new contract beds when funding becomes available.

      5.     When the BOP first entered into privatization, there were approximately 3 competitors. Since then, the BOP routinely receives multiple competitive proposals from 5 - 6 providers and has received as many as 15 responses to one private prison solicitation. Clearly, the market has grown three times the number of competitive bids since entering into privatization. Each year the BOP has, and will continue to have, the need for additional beds. In addition to the BOP, private prison services are procured by other federal agencies such as Immigration and Customs Enforcement, Office of the Federal Detention Trustee, and the United States Marshals Service. Not only would release of sensitive procurement records adversely effect the BOP, it may have serious impact on other federal agencies tasked with procuring privatized housing.

      6.     The BOP is currently soliciting for a follow-on contract for the McRae

PAGE - 4    **Declaration of Matthew Nace**
              *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

Correctional facility, which is scheduled to expire on November 30, 2010. This solicitation is referred to as CAR 12. Thus, the BOP has and will continue to solicit for these contracts. As previously stated, each year the BOP inmate population increases more than the number of beds that the BOP has to house these individuals. Thus, continually requiring our agency to find appropriate housing and care for the growing population of inmates.

7. As referenced above, Congress and federal agencies have adopted regulations to limit the exchange of information on these types of acquisitions to ensure integrity of the competitive market process. Releasing Technical and/or Past Performance information regarding our provider(s) would compromise the integrity of our solicitations by creating an unlevel playing field. Paramount to ensuring that each competitor is competing on a level playing field is maintaining and ensuring that all interested bidders have the same access to information. This is accomplished through the actual solicitation. Releasing Technical and/or Past Performance information would result in a competitor(s) having an unfair competitive advantage of the competitor whose information has been released. For example, if a competitor's Technical and/or Past Performance information was compromised, a competitor could use this information to prepare its offer/bid by changing its price. Release of this information would seriously compromise the integrity of future solicitations by creating an unlevel playing field. If a submitter's past performance information was released, competitors could use this information to change their bid accordingly. If a submitter has good past performance and a competitor has excellent past performance, the competitor would know that the submitter must adjust their pricing to

PAGE - 5    **Declaration of Matthew Nace**
            *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

overcome the lower aspect of past performance in the evaluation scoring. Thus, competitors would alter their pricing to underbid the submitter and would know that their past performance scoring would heighten their advantage.

8. Under FAR regulations, federal agencies release the final awarded price of the contract. What we do not release is the pricing structure that would provide an advantage to a competitor. The assumption that we keep all pricing information withheld is false. In fact, the Plaintiff was provided all the final pricing information for all the contracts at issue in this case. Release of pricing information, not already available to the public, would cause substantial harm to the competitive position of the submitter on future bidding and would undermine the future competitiveness of these contracts. It is our duty as acquisition staff to strive to achieve the best contract through thorough evaluation of past performance, pricing, technical proposals, environmental assessments and small disadvantages business participation. Our efforts, whether in the realm of cost savings to the taxpayers, or other governmental interests, are to ensure integrity of competitive solicitations.

9. In addition, release of the Source Selection information to the public would undermine the purpose and impede the effectiveness of evaluations and obtaining sensitive information on competitive bidders. Congress limited agency discretion to release of information regarding source selection information under Title 41 USC §423.

PAGE - 6    **Declaration of Matthew Nace**
            *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

The statute identifies the records that make up source selection, which includes source selection plans; cost or prices submitted in response to solicitations or lists of those proposed costs or prices; technical evaluation plans; technical evaluation proposals; cost or price of evaluation or proposals; competitive range determinations that identify proposals that have a reasonable chance of being selected for award of contract; rankings of bids, proposals or competitors; reports and evaluations by source selection panels, boards or advisory councils, and other information marked as "source selection information" based on the determination that the source selection official felt that disclosure of the information would jeopardize the integrity of the procurement process.

10.  The majority of the past performance documents are records provided by the submitter regarding their past performance history. This information was submitted for source selection purposes only, and pertain to a contractor's actions under previously awarded contracts, BOP and non-BOP.  It includes, for example, the contractor's record of conforming to contract requirements and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the contractor's adherence to contract schedules, including the administrative aspects of performance; the contractor's history of reasonable and cooperative behavior and commitment to customer satisfaction; the contractor's record of integrity and business ethics, and generally, the contractor's business-like concern for the interest of the customer.

PAGE - 7    **Declaration of Matthew Nace**
            *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

11.    Each offeror provides Past Performance information in response to the solicitation. This information includes contracts and contact information for contracts that are similar in size and scope to the solicitation. From this information, the Contracting Officer contacts the references provided and ask them to provide specific information regarding the offeror's performance on those contracts. All of this information is analyzed by the Contracting Officer to develop up with a Past Performance Evaluation score. Past Performance information is maintained by the Department of Defense through a web-based application called the Past Performance Information Retrieval System (http://www.ppirs.gov/.   Only federal agencies can obtain contractor past performance information. Contractor's can only obtain their past performance but not past performance belonging to another contractor. This exists because federal agencies include contractor's past performance information when evaluating contractor's proposals/offers and is included when making contract award decisions. These records are protected from disclosure under FAR 3.104-4,and under FAR 15.306. Additionally, release of this information would interfere with our agencies ability to evaluate and obtain fair competition for future bidding under the Federal Acquisition Regulations (FAR). Future submitters could circumvent our regulations, if they were provided with this sensitive evaluation information/ source selection information and would compromise the integrity of our solicitations by creating an unlevel playing field.

12. The other documents located in the past performance records are

questionnaire's that are marked during the procurement process by the contracting officer and these documents are source selection material for internal decision making only. These questionnaires contain frank and candid evaluations of the submitter's performances. Title 41 U.S.C. §423 and Title 41 U.S.C. §253b , prohibits disclosure of source selection information and must continue to be afforded protection.

13.   Title 41 U.S.C. 423 , prohibits disclosure of source selection information. It is very clear that the evaluation documents and past performance questionnaire records are source selection and are clearly marked to that effect. Congress limited agency discretion to withhold information regarding source selection information under Title 41 USC 423, and also carefully identified the records that make up source selection, as referenced in paragraph 9. The technical proposal and past performance history records should fall under this protection also.

14.  In addition, under Title 41 USC 253b, information on unsuccessful bidders located within the source selection material is prohibited from disclosure. Portions of the source selection material in the evaluation records contain information that was not set forth or incorporated into an awarded contract.

15.  Information in the technical proposal records contain data regarding how the contractors will undertake the project for designing or  modifying an existing procedure or creating something new.  This includes their methods, systems or structures to be

PAGE - 9     **Declaration of Matthew Nace**
            *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

utilized to accomplish this within a specified period of time.  These records demonstrate the contractor's ability to met the needs of the RFP, financial competitiveness and strategies to overcome any obstacles.   We have not received permission from the offeror's that we can release pricing information, technical information or past performance records.  Thus, pursuant to 48 C.F.R. §15.306, this information must be protected.

16.    Future contracts continue to be requisitioned.  Both statutory and regulatory restrictions are placed upon this agency and myself, as an agency procurement official, highly restricting disclosure of this information.  In fact, as a procurement official, we are bound by regulations that if release of past performance, technical information or source selection information would have an impact on future pending award or selection of a contract, the contracting officer must promptly forward the information to the BOP Procurement Executive for investigation.    Additionally, staff are subject to criminal and civil penalties and/or administrative actions for disclosing procurement information when engaged in conduct constitution a violation of section 41 U.S.C. 423. Criminal penalties include: imprisonment for not more than 5 years and/or fines.  Civil penalties include not more than $50,000 for each violation.  Administrative actions can include cancellation of the federal agency procurement, if a contract has not yet been awarded; recision of a contract; and initiation of suspension or debarment proceedings for the protection of the Government in accordance with procedures in the Federal Acquisition Regulation.

**PAGE - 10    Declaration of Matthew Nace**
*Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

17.   The purpose behind the FAR restrictions on disclosure and the statutory prohibition on release is to ensure integrity of our solicitation and procurement process. The integrity of the procurement process would seriously be undermined by allowing the competitors's, adversarial organizations, inmates, and the public to simply file a FOIA request for this information.

18.   Many contractors that submit proposals in response to our solicitations have been doing business in corrections for many years.  They have modified their approach over the years to provide efficient, secure facilities.  They do not make frequent, major changes to their policies and procedures, therefore, previously submitted proposals contain trade secrets that are currently utilized by the contractor today.  If an old proposal were exposed to the contractors competitors, the information could be used to strengthen their proposal or provide additional approaches or techniques to save money.   Consequently, this information, which is not part of the solicitation, could be used to submit their final price and place them in a position of a competitive advantage.

19.   Although, CAR 6 was awarded to more than one competitor,  this is rare. Normally, CAR solicitations and similar type contacts are awarded to one submitter.  Of the CAR contracts at issue in this FOIA request:  CAR 1 had four (4) bidders, and two (2) were awarded contacts;  CAR 2 had seven (7) bidders and one (1) was awarded the contact;  CAR 5 there were five (5) bidders and one (1) was awarded the contract; and

PAGE - 11    **Declaration of Matthew Nace**
        *Stephen Raher v. Federal Bureau of Prisons;* CV 09-526-ST

CAR 6 had five (5) bidders and five (5) were awarded contracts.

20.    In summary, substantial competitive injury would exist if Technical and/or Past Performance information, source selection information or evaluation records are released.

21. I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

EXECUTED on this _____28th_____ day of October, 2010.

MATTHEW D. NACE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2010,  I made service of foregoing:

**SECOND SUPPLEMENTAL DECLARATION OF MATTHEW D. NACE**, by

placing a copy in a first-class postage paid envelope in Portland, Oregon, for delivery via

U.S. mail to the addresses set forth below:

      Stephen Raher
      P.O. Box 15189
      Portland, OR 97293-5189
      Phone: 503-235-8446

          Pro Se

                                    _  /s/ Deanne Bateson_____
                                      DEANNE Bateson
                                      Legal Assistant
                                        US Attorney's Office
                                        (503) 727-1072