IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEPHEN RAHER

                       Plaintiff,

     v.

FEDERAL BUREAU OF PRISONS

                       Defendant,

     and

THE GEO GROUP, INC.,

                       Defendant-Intervenor.

Case No. 03:09-cv-00526-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Stephen Raher ("Raher"), filed this action under the Freedom of Information

Act ("FOIA"), 5 USC § 552, to obtain documents from the Federal Bureau of Prisons ("BOP").

In November 2008, Raher submitted a FOIA request to BOP for five categories of records pertaining to the solicitation, evaluation, and award of contracts by BOP to provide, maintain, and operate private detention facilities for foreign nationals serving criminal sentences imposed by the federal courts.  Some of those records were submitted to BOP by Reeves County, Texas.

In July 2009, BOP provided Raher with 17 documents comprising 1,764 pages of contracts awarded by BOP under various solicitations referred to as Criminal Alien Requirement ("CAR") Phases 1, 2, 5 and 6.  BOP redacted information from these documents and provided Raher with an initial Vaughn Index stating various FOIA exemptions for withheld information. In November 2009, after conducting another search, BOP provided Raher with 2,056 additional pages, many of which were redacted, and withheld approximately 6,000 pages.  That production was accompanied by a Supplemental Vaughn Index ("First SVI") stating the basis for withholding 65 documents relating to CAR Phases 5 and 6.

On March 28, 2010, BOP and Raher filed motions for summary judgment.  This court denied BOP's motion, deferred Raher's motion, and ordered BOP to submit additional evidence and explanations for withholding responsive documents by November 5, 2010 (docket # 48).  On November 3, 2010, this court allowed The GEO Group, Inc. ("GEO") to intervene (docket # 60).

On November 5, 2010, BOP produced heavily redacted documents and an accompanying Second Supplemental Vaughn Index ("Second SVI") (docket # 65-1) and Third Supplemental Vaughn Index ("Third SVI") (docket # 65-2).  All parties filed supplemental memoranda and declarations addressing the adequacy of the Second SVI and Third SVI.  Among other arguments, BOP and GEO asserted that several documents were exempt under 5 USC

§ 552(b)(4) ("Exemption 4") because they contained confidential information, including pricing information.[1]

On May 24, 2011, the court granted in part Raher's partial motion for summary judgment. Opinion and Order ("May 2011 O&O") (docket # 130).

That same date, Raher notified BOP and GEO that he would be moving for sanctions against BOP and its counsel under FRCP 11 and against both BOP and GEO under FRCP 56(h), 28 USC § 1927, and the court's inherent authority. Raher followed through with his threat on June 29, 2011, by filing three Motions for Imposition of Sanctions against BOP and GEO and their counsel (dockets # 139, # 140, & # 141). For the reasons set forth below, Raher's motions are denied.

## DISCUSSION

Central to Raher's motions is a public document published by Reeves County, Texas, on March 8, 2010, seeking approximately $19 million of "Series 2010 Taxable Additional Revenue Certificates of Participation – Lease Rentals" ("Offering Circular"). Second Schiller Decl. (docket # 134), Ex. 1. This Offering Circular was issued to raise funds to finance part of the cost to improve the existing Reeves County Detention Center ("RCDC") in connection with the CAR Phase 6 contract awarded by BOP to Reeves County and GEO on or about January 17, 2007. *See* Third Raher Decl. (docket # 81), Ex. C., p. 2. Included in that Offering Circular was pricing-related information for Reeves County CAR Phases 5 and 6 contracts that Raher sought in his FOIA requests. Second Schiller Decl., ¶ 3. BOP had withheld that pricing-related information as

---

[1] The parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit or declaration or to the page(s) of the deposition transcript.

confidential under Exemption 4, supported in part by a November 5, 2010 declaration of Kyle

Schiller, GEO's Vice President of Operations/ Administration (docket # 61).

GEO, formerly a subsidiary of The Wackenhut Corporation, offers a range of correctional

and related institutional services to federal, state, local and overseas government agencies, has

provided corrections and detention management services to the federal government for more than

22 years and to Texas for more than 21 years, and holds a 25% share of both the U.S. and

international private corrections markets. Offering Circular, pp. 50-51. Effective February 2007,

it entered into a 10-year contract with Reeves County to provide management and other

associated services in connection with the RCDC. *Id* at 53-54.

Neither BOP nor GEO submitted or referenced the Offering Circular until after issuance

of this court's May 2011 O&O. On June 10, 2011, Schiller filed his Second Declaration

attaching the Offering Circular which had "recently come to [his] attention," explaining that he

was previously "unaware that Reeves County had released this information publicly" (docket

# 134). GEO then withdrew its opposition to disclosure of the Reeves County pricing-related

information.

Raher contends that BOP and GEO should be sanctioned because they knew or should

have known about the public nature of the pricing information he sought before the filing of

summary judgment motions. He characterizes their conduct as committed in bad faith with the

improper intent to harass him, cause unnecessary delay in the proceedings, and needlessly

increase his cost of litigation. Accordingly, he seeks sanctions, fees and costs pursuant to:

(1) FRCP 11 against BOP and its counsel; (2) FRCP 56(h) against BOP and GEO; (3) 28 USC

§ 1927 against counsel for both BOP and GEO; and (4) the court's inherent authority against

BOP and GEO and their respective counsel.

## I.  Rule 11 Sanctions Against BOP and its Counsel

### A.  Legal Standards

An attorney or unrepresented party who presents a pleading, written motion, or other

paper to the court person:

> certifies that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by
> existing law or by a nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support, or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence, or, if
> specifically so identified, are reasonably based on belief or a lack of
> information.

FRCP 11(b).

The court may impose an appropriate sanction on an attorney or party who violates

Rule 11 after being given notice and a reasonable opportunity to respond.  FRCP 11(c)(1).

However, sanctions may only be awarded after a 21-day period has passed in order to give the

attorney time to withdraw or appropriately correct an error.  FRCP 11(c)(2).  If the challenged

paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within the

21-day period, then the motion must not be filed or be presented to the court.  *Id*.  As explained

by the Advisory Committee Notes to the 1993 Amendments:

> These provisions are intended to provide a "safe harbor" against motions
> under Rule 11 in that a party will not be subject to sanctions on the basis

of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. . . . [T]he timely withdrawal of a contention will protect a party against a motion for sanctions.

In light of the clear language and intent of Rule 11 and the "safe harbor" provision, "'a party cannot wait until after summary judgment to move for sanctions under Rule 11.'" *Barber v. Miller*, 146 F3d 707, 711 (9th Cir 1998), quoting *Ridder v. City of Springfield*, 109 F3d 288, 297 (6th Cir 1997), *cert denied*, 522 US 1046 (1998). "If the court disposes of the offending contention before the twenty-one day 'safe harbor' period expires, a motion for sanctions cannot be filed with or presented to the court. Any other interpretation would defeat the rule's explicit requirements." *Ridder*, 109 F3d at 295. After a judgment has been entered, "it is too late for the offending party to withdraw the challenged claim . . . . Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Id* at 296-97. Applying that same reasoning, the Ninth Circuit held in *Barber* that Rule 11 sanctions were barred since the case had already been dismissed with prejudice prior to both notice and service of the motion for sanctions.

However, the "safe harbor" provision does not have the same effect if any claim remains pending. In *Truesdell v. So. Cal. Permanente Med. Group*, 293 F3d 1146 (9th Cir 2002), the case was dismissed with leave to amend on the 20th day. Because the claim was still live, the court held that the 21-day period was still running. It reasoned that "[a]llowing a party to wait until judgment is entered before serving a Rule 11 motion would effectively eliminate the safe harbor altogether." *Id* at 1152.

Raher's motion for sanctions against BOP and its counsel is based on alleged violations related to FOIA Exemptions 2 and 4. He served that motion on May 23[2] and filed it on June 29, 2011. Between those two dates on May 24, the court issued the May 2011 O&O partially granting Raher's motion for summary judgment and ordering an evidentiary hearing to address documents relevant to Exemption 4 and to resolve other issues (docket # 130). At a status conference on June 13, 2011, after GEO had filed the Second Schiller Declaration, GEO orally moved to withdraw (docket # 135). At a later status conference on July 13, 2011, the court ordered BOP to "produce all documents ordered to be released within 30 days, with the exception of CCA's documents regarding Exemption 4 which must be released within 45 days, together with a Vaughn Index for any withheld CCA documents" (docket # 147).

Because BOP received Raher's motion for sanctions on May 24, 2011, the same day the court issued the May 2011 O&O, it complains that it was not given the mandatory 21 days to withdraw or correct the alleged error before the ruling on summary judgment. However, the May 2011 O&O did not dismiss the case and enter a final judgment as to all claims. As in *Truesdell*, a live issue remained, namely the applicability of Exemption 4 as to other submitters, including CCA. Therefore, the 21-day "safe harbor" period continued to run. During that time period, BOP did not withdraw its reliance on Exemption 4.

Because Raher did not violate the safe harbor provision in Rule 11 by filing his motion for sanctions against BOP, the court will next assess whether the behavior by BOP and its counsel warrants the imposition of sanctions.

---

[2] Raher's motion for sanctions lists the date of service as May 23, but the parties cite May 24, 2011, as the date of service.

B. **Legal Standards**

Rule 11 addresses the problems of frivolous filings and abuse of judicial procedures as a tool for harassment. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F2d 196, 201 (9th Cir 1988); *Zaldivar v. City of Los Angeles*, 780 F2d 823, 830 (9th Cir 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 US 384 (1990). It creates and imposes on a party or counsel an affirmative duty to investigate the law and facts before filing. *Rachel v. Banana Republic, Inc.*, 831 F2d 1503, 1508 (9th Cir 1987). It further obliges an attorney to dissuade a client from pursuing specious claims, thereby avoiding possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim. *Mohammed v. Union Carbide Corp.*, 606 F Supp 252 (ED Mich 1985).

Whether to impose sanctions is determined by the reasonableness of inquiry into the law and facts, not the good or bad faith of the signatory. *G.C. & K.B. Investments v. Wilson*, 326 F3d 1096, 1109 (9th Cir 2003); *cf. Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F2d 928, 932 (7th Cir 1989) ("[A] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand."). A pleading, motion or other paper well grounded in fact and law cannot be sanctioned regardless of subjective intent. *Zaldivar*, 780 F2d at 832. Conversely, a party is responsible for innocent, good faith mistakes of law or for carelessness of counsel if a reasonable inquiry would have revealed a mistake. *Lloyd v. Schlag*, 884 F2d 409, 412 (9th Cir 1989).

A filing is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of a competent attorney admitted to practice before the district court. *G.C. & K.B. Investments*, 326 F3d at 1109; *In re Grantham Bros.*, 922 F2d 1438, 1442 (9th Cir 1991), *Zaldivar*, 780 F2d at

831.  "A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." *Townsend v. Holman Consulting Corp.*, 929 F2d 1358, 1365 (9th Cir 1990).  Sanctions may be imposed for improper or unwarranted allegations, even though at least one non-frivolous claim has been pled. *Id* at 1362-65.

### A.  Exemption 2

Raher first argues that BOP violated Rule 11 by withholding documents that under no reasonable interpretation fall within the former High 2 exemption.[3]  BOP produced the previously withheld documents to Raher in April 2011 which included 16 pages that contain general information about operating a prison.  Sixth Raher Decl. (docket # 173), Ex. C.  According to Raher, these documents show that the repeated claims by BOP that it complied with FOIA's segregability requirement are objectively unreasonable.

BOP responds that any failure to segregate and produce 16 out of 8,000 pages of documents should be construed as inadvertent and that, in any event, the withheld documents under the High 2 Exemption are innocuous because of their subject matter.  If the documents were innocuous, as they appear to be, then they clearly should have been produced initially and not withheld.  However, this court can perceive no benefit to BOP that would cause it to

---

[3] BOP initially relied on the High 2 Exemption under FOIA, 5 USC § 552(b)(2), to justify withholding portions of documents listed in the initial Vaughn Index, as well as the First SVI, Second SVI and Third SVI. In March 2011, the United States Supreme Court invalidated the use of the High 2 exemption. *Milner v. Dep't of the Navy*, 562 US – , 131 S Ct 1259 (2011). As a result, Exemption 2 may no longer be used to justify withholding records on the grounds that disclosure would risk circumvention of the law or federal agency functions, or would reveal internal rules and practices that guide agency personnel in performing their duties.  "Exemption 2, consistent with the plain meaning of the term 'personnel rules and practices' encompasses only records relating to issues of employee relations and human resources." *Id* at 1271.  Accordingly, in the May 2011 O&O, this court found that BOP cannot rely on the High 2 Exemption to withhold any of its documents and granted Raher summary judgment as to Exemption 2.

intentionally withhold such innocuous documents. Accordingly, this court is persuaded that any failure by BOP to disclose these few pages is nothing more than inadvertent and not sanctionable under Rule 11.

### B. Exemption 4

Raher also argues that BOP and its attorney, Kevin Danielson, knew or should have known that certain documents regarding the Reeves County and CCA contracts were not confidential and, therefore, violated Rule 11 by making factual allegations to the contrary with no evidentiary support. He asserts that a reasonable, pre-filing inquiry would have revealed the existence of the Offering Circular which disclosed the pricing-related information withheld by BOP as confidential under Exemption 4.

In response, Danielson and two other BOP employees (including Matthew Nace, Chief of Acquisitions Branch at BOP, and Leann Tufte, Senior Paralegal Specialist for Office of General Counsel, FOIA Section) declared that they were unaware of it prior to being served with the motion for sanctions. Danielson Decl. (docket # 152), ¶ 3; First Nace Suppl. Decl. (docket # 151), ¶ 3; Fourth Tufte Suppl. Decl. (docket # 150), ¶ 3. There is no reason to question the veracity of their statements. As Tufte explains, she receives an average of more than 450 FOIA requests per year, and this FOIA request was voluminous. Fourth Tufte Suppl. Decl., ¶ 3.

Based on its date, the Offering Circular clearly was not among the documents submitted by Reeves County to BOP with its CAR Phase 5 or 6 solicitations. Furthermore, the initial search and production of documents by BOP was performed in 2009, after BOP had requested input from its submitters in response to Raher's FOIA request and well before the Offering Circular was published. The Offering Circular was not published until a few weeks before BOP

filed its motion for summary judgment. Even if BOP had a duty of inquiry before filing its

summary judgment motion, it is unreasonable to impose a duty on BOP at that time to make an

additional inquiry to all submitters in an effort to uncover any new public disclosure unless it has

some reason to suspect such a public disclosure.

Raher contends that given the level of control BOP exercised over Reeves County's

operations, it is not plausible that the Offering Circular would have been published without

BOP's knowledge. In support, he points to the RFP for the CAR Phase 6 contract which requires

BOP's prior written approval before construction of any new facilities and also requires the

contractor to "coordinate, in advance, all public information related issues" with BOP. Second

Raher Decl. (docket # 35), Ex. D, pp. 3, 10. He also notes that the contract requires regular

meetings with BOP to assess the contractor's performance. However, it is far from evident that

the Offering Circular had anything to do with construction of new facilities beyond those

required by the contract or that it is the type of "public information" that requires prior BOP

approval. Raher's argument rests on an unwarranted assumption about the level of BOP's

control over Reeves County's quest for financing.

Given the affidavits submitted by BOP, there is no basis to conclude that BOP had any

reason to know about Reeves County's Offering Circular until it was brought to its attention by

GEO and/or Raher. Therefore, this court declines to impose a Rule 11 sanction against BOP or

its counsel on this basis.

///

///

///

11 - OPINION AND ORDER

C. **Unnecessary Delay**

Raher also seeks Rule 11 sanctions because BOP took affirmative steps to prevent discovery that he believes would have helped him refute misleading allegations. In particular, he relies on BOP's opposition to his January 2010 motion to compel discovery.

In FOIA cases, "discovery is limited because the underlying case revolves around the propriety of revealing certain documents." *Lane v. Dep't of Interior*, 523 F3d 1128, 1134 (9th Cir 2008), citing *Wiener v. FBI*, 943 F2d 972, 977 (9th Cir 1991). It is within the court's discretion to defer discovery until after summary judgment. *Id*; *see Miscavige v. IRS,* 2 F3d 366, 369 (11th Cir 1993) ("The court's denial of discovery . . . was within [its] discretion. . . . Generally, FOIA cases should be handled on motions for summary judgment. . . ."); *Nolan v. Dep't of Justice*, 973 F2d 843, 849 (10th Cir 1992) ("[T]he district court acted well within its discretion in deferring discovery so as to determine the propriety of the [Privacy Act] exemptions."); *Simmons v. Dep't of Justice*, 796 F2d 709, 711-12 (4th Cir 1986) ("[T]he district court has the discretion to limit discovery in FOIA cases and to enter summary judgment on the basis of agency affidavits . . . .");

Discovery is sparingly granted in FOIA cases and only when an agency has not taken sufficient steps to find responsive documents. *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury*, 534 F Supp 2d 1126, 1131-32 (ND Cal 2008). Discovery is denied when the declarations from an agency are submitted in good faith, reasonably detailed, and the court is satisfied no facts are disputed. *Id* at 1132. To justify discovery, there must be a showing of bad faith on the part of the agency "sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption

claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id* (citations and quotations omitted).

Given this high bar to obtaining discovery in FOIA cases, BOP reasonably objected to Raher's motion to compel discovery and prevailed. Thus, Raher has not shown any unnecessary delay to justify Rule 11 sanctions caused by BOP opposing his discovery request.

**D.  Duty to Review All the Documents**

Raher further argues that BOP and its counsel failed to review all of the documents withheld under the Vaughn indices. BOP responds that it was reasonable for its counsel to rely in part on BOP employees to determine which documents are subject to FOIA exemptions and also to rely on a representative sampling.

However, the line of cases cited by BOP only supports the court's use of representative sampling when performing an *in camera* review of voluminous documents. As explained in *Bonner v. Dep't of State*, 928 F2d 1148, 1151 (DC Cir 1991) (citations omitted):

> Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved. Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, "extrapolate its conclusions from the representative sample to the larger group of withheld materials."

BOP cites no case that permits attorneys to use representative sampling when responding to a FOIA request. Nevertheless, when a FOIA request involves a voluminous number of documents, as in this case, an agency and its counsel do not necessarily act for an improper purpose sufficient to justify Rule 11 sanctions by failing to review each and every document. As

is evident from the documents produced by BOP which this court reviewed *in camera*, many of the documents requested by Raher can easily be segregated into groups due to their similarity. As a result, performing a representative sampling is an inherently reasonable method of reviewing documents not only by the court, but also by BOP, its employees and counsel. Accordingly, this court has no basis to find that BOP and its counsel acted unreasonably by not reviewing every document at issue.

### E.  Conclusion

Under the circumstances, BOP and its counsel did not unreasonably fail to produce documents under the High 2 Exemption, fail to perform a pre-filing inquiry as to the public disclosure of withheld information by Reeves County, delay the case by opposing discovery or fail to review every document.  Thus, Raher has not made the requisite showing for an award of sanctions against BOP and its counsel under Rule 11.[4]

## II.  Rule 56(h) Sanctions Against BOP and GEO

Raher moves for sanctions against BOP and GEO under FRCP 56(h)[5] arguing that the declarations of Schiller, Tufte, and Nace were submitted in bad faith.  That rule provides as follows:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

---

[4]  As Raher concedes, any allegations of sanctionable behavior as to documents from CCA are not ripe as this issue is still before the court.

[5]  The amendments to the Federal Rules of Civil Procedure in 2009 renumbered FRCP 56(g) as 56(h).

Reviewing other cases addressing sanctions under Rule 56(h), one court concluded that:

> [C]ourts have found "bad faith" only where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case. Awarding sanctions . . . is "rare" and the conduct involved generally must be "egregious." Additionally, courts have not awarded sanctions under Rule 56(g) where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion.

*Abdelkhaleq v. Precision Door of Akron*, 653 F Supp2d 773, 787 (ND Ohio 2009) (citations and quotations omitted).

Bad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose. Affidavit testimony that is materially contradicted by prior deposition testimony alone is not sufficient to show the necessary bad faith under Rule 56(h). *Thoroughman v. Savittieri*, 2009 WL 1059972, at *2 (9th Cir April 21, 2009). Bad faith also is not established by defense counsel's inadequate handling of the case which caused needless delay. *Murrary v. Bd. of Ed. of the City of N.Y.*, 111 F Supp2d 349, 350-5 1 (SDNY 2000). *See also Hunt v. Tektronix, lnc.*, 952 F Supp 998, 1010 (WDNY 1997) ("While Ms. Dolin's actions were unfortunate, I do not find that they deliberately were taken in bad faith for purposes of Rule 56(g) sanctions."); *Feltner v. Partyka*, 945 F Supp 1188, 1192 (ND Ind 1996) (denying sanctions in part because there was no evidence that the affidavit's deficiencies were willful).

**A.  Schiller Declaration**

Raher argues that it is not plausible that Schiller was unaware of the Offering Circular when he claimed in his first declaration that the Reeves County pricing data was confidential. Because the Offering Circular contained internal data from GEO, Raher argues that GEO necessarily was involved in its preparation and must be presumed to have known about it.

Raher's chain of inferences, however, assumes too much.  First, Raher has no factual support for his assertion that GEO was involved in the preparation of the Offering Circular.  The Offering Circular states that certain of its data and information was "obtained from independent published sources," including GEO's 2008 Annual Report, 3rd Quarter 2009 Form 10-K, and "Internal Data (Various, 2007-2009)."  Offering Circular, pp. 77-78.  It does not state or imply, as Raher argues, that GEO specifically sent information to Reeves County intending that it be included in the Offering Circular.  Even if GEO provided information to Reeves County for inclusion in the Offering Circular, that does not necessarily mean that GEO helped prepare the Offering Circular and knew what else it contained.  After all, GEO already had a contract with Reeves County for managing the RCDC and had no need to be involved in any bond issue sought by Reeves County to finance the RCDC.

Second, Reeves County was the prime contractor and possessed the pricing information submitted in its bids to obtain the BOP contracts.  Therefore, no inference can be made that Reeves County obtained the pricing data from GEO.  For its management services provided to Reeves County, GEO received compensation.  Offering Circular, p. 55.  However, it is not clear that those prices are necessarily the same as the prices BOP is obligated to pay Reeves County which is the pricing information sought by Raher.

Third, Schiller unequivocally states that he was unaware of the Offering Circular prior to submitting his first declaration.  Schiller correctly stated that GEO treats pricing information as confidential.  He simply did not know that Reeves County had voluntarily disclosed that confidential information, rendering it subject to production under FOIA.  Thus, Schiller cannot be accused of making a highly reckless representation.

Nonetheless, Raher asks the court to impute knowledge of the Offering Circular to Schiller and GEO. Courts may not impute knowledge "unless it is reasonable to do so." *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F2d 573, 579 (3rd Cir 1992). It is not reasonable to do so here. Reeves County, not GEO, published the Offering Circular revealing pricing information that GEO believed to be confidential. There are simply no circumstances pointing to Schiller or GEO being in a position to know about the Offering Circular at the time. As soon as Schiller learned of the public disclosure, he quickly corrected his mistake. While it is troublesome that Raher first brought to light the public nature of the Offering Circular, it does not show that Schiller willfully misled the court.[6]

## B. Nace and Tufte Declarations

BOP submitted the supplemental declarations of Nace and Tufte who both stated that they had no knowledge of the Offering Circular at the time of their earlier declarations. Fourth Tufte Suppl. Decl., ¶ 3; First Nace Suppl. Decl., ¶ 3. Raher has not submitted any evidence of egregious conduct by either of these individuals. Instead, he argues that the Offering Circular is conclusive because it was made public despite Tufte's and Nace's contrary assertions that such information was confidential. This is not enough to show bad faith under Rule 56(h). Raher has not submitted any evidence of any circumstances that could reasonably lead to the inference that Tufte and Nace knew about the Offering Circular and blatantly withheld the information.

///

---

[6] Raher twice introduced evidence to argue that Reeves County had voluntarily released pricing data. *See* Barry Decl., ¶ 3. Raher also produced a Texas state court administrative proceeding in which Reeves County admitted that it did not object to the release of a BOP contract under Texas Law. Third Raher Decl., Ex. F, at 1. That contract also contained pricing information that Reeves County asserted was confidential and exempt from disclosure. However, BOP and GEO argued that disclosure pursuant to a public records request under state law is not the same as publicly available information under FOIA.

### III.  Sanctions under 28 USC § 1927 Against BOP, GEO, and Their Counsel

Raher also seeks sanctions under 28 USC § 1927 which provides as follows:

> Any attorney or other person admitted to conduct cases in any court
> of the United States or any Territory thereof who so multiplies the
> proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

An "[u]ndoubtedly unmeritorious" claim may constitute bad faith.  *In re Peoro*, 793 F2d 1048, 1051 (9th Cir 1986).  However, "section 1927 sanctions must be supported by a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a *frivolous* argument, or argues a meritorious claim for the purpose of harassing an opponent."  *B.K.B. v. Maui Police Dep't*, 276 F3d 1091, 1107 (9th Cir 2002) citing *Moore v. Keegan Mgmt. Co.,* 78 F3d 431, 436 (9th Cir 1996) (internal quotations omitted) (emphasis original).  Thus, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass . . . . [R]eckless nonfrivolous filings, without more, may not be sanctioned."  *Id* (quotations omitted).

Raher concedes that he has little evidence as to the intent of BOP's and GEO's counsel, but argues that their acts were sufficiently reckless to justify § 1927 sanctions.  In particular, he contends that GEO's counsel asserted that information was confidential without verification,[7] and that BOP's counsel argued that federal regulations were applicable contrary to a prior concession

---

[7]  Raher also argues that some information was protected as a trade secret.  GEO acknowledges that Schiller used the term "trade secret" as well as "confidential" when describing information withheld under Exemption 4. Though the choice of words was imprecise and unfortunate, it still does not show bad faith required for § 1927 sanctions.

during oral argument.  He also points to the declaration of Cathy Scott (docket #132) which contained hearsay.

GEO responds that Schiller's first declaration cannot be the basis for bad faith sanctions because it should be construed as GEO's initial pleading/answer which cannot be sanctioned under § 1927.  "Because the section authorizes sanctions only for the 'multipli [cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading."  *Keegan Mgmt. Co.*, 78 F3d at 435.  However, GEO's joinder in this case, which was filed on November 5, 2010 (docket #63), is its initial pleading, not Schiller's first declaration.

Nonetheless, as discussed above, Raher has not shown that Schiller's first declaration was submitted in bad faith.  Though Raher contends GEO "crossed the line" because it had pricing information that he sought, he has offered nothing more than argument supported by speculation. While the Offering Circular was public, it was prepared and published by Reeves County, not GEO.

Raher is correct that BOP's counsel did advance an argument based on federal regulations that had previously been conceded as inapplicable.  A better approach would have been to withdraw the prior concession before submitting further argument on the applicability of the regulations.  In any event, as this court noted in the May 2011 O&O, it invited BOP to supplement its first two Vaughn indices.  In response to that invitation, it can hardly be characterized as bad faith for counsel to proffer a prior argument, even if previously withdrawn, in the hope of perhaps persuading the court to apply it to another exemption.

The Scott declaration submitted by BOP did contain inadmissible hearsay, but is not sanctionable for that reason. When Scott was a Senior Contract Specialist in the Privatized Corrections Contracting Section in BOP's Acquisitions Branch, she was responsible for coordinating responses to FOIA Requests. Scott Decl. (docket # 132), ¶ 1. She submitted her declaration in response to the court's Order for BOP to supplement the record with a detailed description of the search performed for all documents responsive to Item 3 of Raher's FOIA request. *Id* at ¶ 2. She explained that the initial search was done by Amanda Pennel who was no longer working for BOP and that she was unable to speak with Ms. Pennel prior to the due date for BOP's response. *Id* at ¶ 7. Therefore, she described the steps and process that Ms. Pennel normally would have taken for performing the search. *Id* at ¶¶ 7-8. Given the time constraints, BOP did not act in bad faith by submitting Scott's declaration. In fact, when Raher complained about the inadequacy of that declaration, BOP obtained and filed a declaration from Ms. Pennel (docket #137) which confirmed Scott's testimony. Raher's suspicion of BOP cannot be equated to an act of bad faith by BOP.

Raher also faults Scott for admitting that she failed to search for all documents, in particular, all contract modifications. However, Scott explained that Raher had only requested the contracts awarded and that BOP treats modifications as post-award changes to the contract. Scott Decl., ¶ 14. Once Raher clarified that he also wanted all contract modifications, she agreed to search for and produce them. *Id*. Thus, the initial failure to search may be excused as a miscommunication. Raher has given no compelling reasons to disbelieve BOP on this point.

///

///

**IV.  Sanctions Under the Court's Inherent Authority Against BOP and GEO**

Finally, Raher seeks sanctions against BOP and GEO under the court's inherent authority.

A sanction imposed under the court's inherent power requires a specific finding of bad faith.

*Roadway Express*, *Inc. v. Piper*, 447 US 752, 766 (1980).  However, bad faith "does not require

that the legal and factual basis for the action prove totally frivolous; where a litigant is

substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable

claim will not bar the assessment of attorney's fees."  *Fink v. Gomez*, 239 F3d 989, 992 (9th Cir

2000) (citations and quotations omitted).  Sanctions under the court's inherent authority are

typically used as a last resort:

> There is, therefore, nothing in the other sanctioning mechanisms or
> prior cases interpreting them that warrants a conclusion that a
> federal court may not, as a matter of law, resort to its inherent
> power to impose attorney's fees as a sanction for bad-faith conduct.
> This is plainly the case where the conduct at issue is not covered by
> one of the other sanctioning provisions. But neither is a federal
> court forbidden to sanction bad-faith conduct by means of the
> inherent power simply because that conduct could also be
> sanctioned under the statute or the Rules.

*Chambers v. NASCO, Inc.*, 501 US 32, 50 (1991).

As discussed above, Raher has moved for sanctions under Rule 11, FRCP 56(h) and 28

USC § 1927, the latter two of which require a showing of bad faith.  However, the requisite bad

faith to impose sanctions is absent.  For the same reasons, Raher's motion for sanctions under the

court's  inherent authority which requires a showing a bad faith is also denied.

**V.  Discovery Request**

If the court declines to issue sanctions based on a lack of evidence as to the bad faith of

BOP, GEO, and their counsel, Raher seeks discovery to show that sanctions are appropriate.  In

particular, he seeks to take a deposition of Schiller and others who submitted declarations attesting to their alleged good faith.

This court is not persuaded discovery is necessary to ferret out any alleged wrongdoing. Even if discovery were allowed, it is not clear what kind of evidence Raher believes he can obtain that would support a sanction. He wants to cross-examine Schiller about his job responsibilities and when and how he learned of the Offering Circular. He surmises that if Schiller lacked familiarity with the post-award treatment of contract proposals, responses to FOIA requests, or operations of RCDC, then he was not selected by GEO in good faith as its representative. However, Schiller's first declaration summarizes his experience and qualifications sufficient for him to be state opinions as a knowledgeable representative of GEO. Schiller Decl. (docket # 61), ¶¶ 1-5. On the other hand, if he is as experienced as GEO claims, then Raher surmises that he should have known that pricing information in the corrections industry is treated as non-confidential. However, Schiller has stated under penalty of perjury that such information is treated by GEO as confidential and that he knew nothing about the Offering Circular. He is unlikely to change his statement in response to Raher's questioning. Moreover, simply because Reeves County disclosed pricing information in the Offering Circular does not mean that pricing information is not otherwise treated as confidential by the corrections industry. At this point, of the five submitters of successful bids to BOP, only Reeves County has conceded that the pricing information is not confidential based on its public disclosure.

Raher also contends that expert testimony concerning the standard practice of the municipal finance industry will prove that GEO had to know about the Offering Circular at the time it was published. Even if bond counsel for Reeves County contacted GEO to perform due

diligence prior to issuance of the Offering Circular, that is a far cry from Schiller knowing that the Offering Circular would disclose pricing information previously withheld under FOIA as confidential. It is entirely possible that someone at GEO knew that Reeves County would publish the Offering Circular, but more is required to show that Schiller's first declaration was intentionally or recklessly false and submitted by GEO in bad faith.

This court also can conceive of no reason to allow Raher to cross-examine Nace, Tufte or Scott concerning their declarations. Therefore, Raher's request for discovery is denied.

## **ORDER**

After reviewing the previously withheld documents, Raher may yet persuade the court that BOP and GEO have acted with an improper purpose to hide information which should have been disclosed under FOIA. However, at this juncture, the court declines to award sanctions against BOP, GEO or their counsel under either FRCP 11, FRCP 56(h), 28 USC § 1927, or the court's inherent power. Therefore, Raher's Motions for Imposition of Sanctions (dockets # 139, #140, & #141) are DENIED.

DATED this 12th day of October, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge