UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEPHEN RAHER,

                Plaintiff,

                                        Case No. 09-cv-526-ST

      v.

                                        OPINION AND ORDER

FEDERAL BUREAU OF PRISONS,

                Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Stephen Raher ("Raher"), filed this action under the Freedom of Information

Act ("FOIA"), 5 USC § 552, to obtain documents from defendant, the Federal Bureau of Prisons

("BOP"). In November 2008, Raher submitted a FOIA request to BOP for five categories of

records pertaining to the solicitation, evaluation, and award of contracts by BOP to provide,

maintain, and operate private detention facilities for foreign nationals serving criminal sentences

imposed by the federal courts. Based on BOP's allegedly inadequate response, Raher filed this

case on May 13, 2009, which has resulted in a series of motions and rulings.

Raher has now filed a Motion for Interim Fee Award in the sum of $21,393.00 for fees

incurred to retain an expert, ECONorthwest, to file a declaration opposing BOP's withholding of

information under 5 USC § 552(b)(4) ("Exemption 4").  For the reasons set forth below, that motion is granted.

## DISCUSSION

### I.  Legal Standard

The Freedom of Information Act ("FOIA") allows district courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 USC § 552(a)(4)(E)(i).  Congress added this provision to FOIA in 1974 in response "substantial 'foot-dragging' on the part of administrative officials who invoked every conceivable delaying technique and forced citizens requesting information under the FOIA to resort to expensive litigation for vindication of their statutory rights."  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F2d 704, 710 (DC Cir 1977).  *Pro se* parties, such as Raher, are not entitled to recover attorney fees, but may recover their litigation costs.  *Carter v. Veterans Admin.*, 780 F2d 1479, 1481-82 (9th Cir 1986).

An award of fees and costs under FOIA's fee provision requires a two-part analysis.  First, a plaintiff must be eligible for an award.  Second, an eligible plaintiff can receive fees only if the district court determines that he is entitled to an award.  *Church of Scientology of Calif. v. United States Postal Serv.*, 700 F2d 486, 492 (9th Cir 1983).

### II.  Eligibility for Award

A FOIA plaintiff is eligible for a fee award if he has "substantially prevailed" in court.  5 USC § 552(a)(4)(E)(i).  A plaintiff substantially prevails if he obtains "relief through either: (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial."

5 USC § 552(a)(4)(E)(ii).  Raher is eligible for an award under both prongs.

The declaration submitted by Raher's expert addressed BOP's Exemption 4 claims.  On

May 24, 2011, in ruling on Raher's first summary judgment motion, this court ordered BOP to

release all information previously withheld under Exemption 4, except for certain "pricing

information" which was to be considered at an evidentiary hearing.  Opinion & Order (docket

#130), pp. 41-42.  Thus, as to the Exemption 4 information, other than pricing information,

Raher prevailed under 5 USC § 552(a)(4)(E)(i)(I).

The evidentiary hearing on the pricing information withheld under Exemption 4 did not

occur because BOP (and then-intervenor GEO Group) voluntarily withdrew all objections to

Exemption 4 and produced the documents after Raher discovered that certain pricing information

had been released in a public bond offering by Reeves, one of the contractors.  This publication

conclusively defeated any claim of Exemption 4 as to the Reeves County's pricing information.

Because the pricing information was ultimately released by BOP's voluntary action, Raher also

prevailed under 5 USC § 552(a)(4)(E)(i)(II).

## III.    **Entitlement to Award**

Next the court must determine whether Raher is entitled to receive an award of expert

witness fees.  Entitlement to an award of fees and costs under FOIA is determined by the

following four factors:  "(1) the public benefit derived from the case; (2) the commercial benefit

to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness

of the agency's withholding of the requested documents."  *Davy v. Central Intelligence Agency*,

550 F3d 1155, 1159 (DC Cir 2008).  "No one factor is dispositive."  *Id*.  The second and third

factors are "closely related and often considered together."  *Oil, Chem. & Atomic Workers Int'l*

*Union AFL-CIO v. United States Dep't of Energy*, 141 F Supp2d 1, 5 (DDC 2001), *rev'd on other grounds*, 288 F3d 452 (DC Cir 2002).  All four factors weigh in favor of Raher.

With respect to the first factor, the release of the information withheld under Exemption 4 in response to this lawsuit provides a public benefit by:  (1) contributing to "the growing public body of knowledge concerning the privatization of governmental entities," *id* at 6, namely BOP's efforts to privatize its operations; (2) casting light on the conditions of confinement imposed on immigrants held in privately operated BOP facilities; and (3) promoting scholarly research regarding the private corrections industry (*see* Stephen Raher, *The Business of Punishing: Impediments to Accountability in the Private Corrections Industry*, 13 Richmond JL & Public Interest 209 (2010)).   With respect to the second and third factors, it is undisputed that Raher has pursued this matter solely to promote public understanding of BOP's contracting processes, has no commercial interest in this case, and will derive no pecuniary benefit from it.

The fourth factor "considers whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  *Davy*, 550 F3d at 1162 (citations and internal quotation marks omitted).  BOP contends that it had a reasonable basis for withholding Exemption 4 information based on arguments by the submitters that release of certain financial information would cause them competitive harm.

In support of his summary judgment motion, Raher submitted private prison contracts obtained from three different states showing that the public release of *per diem* pricing is a widely accepted custom in the corrections industry.  Fourth Raher Decl. (docket #97), ¶¶ 4-6, 10; Barry Decl. (docket #36), Ex. A (unredacted Reeves County's CAR Phase 5 contract with BOP).  In response, BOP argued that it could not disclose the number of prison beds for which it had

contracted or the *per diem* pricing structure because such information was confidential and, if

released, would harm the commercial interests of the contracts.   In support, it submitted a

declaration by Matthew Nace that BOP only releases "the final awarded price of the contract"

and not "the pricing structure that would provide an advantage to a competitor."  Nace Decl.

(docket #68), ¶ 8.  Accordingly, BOP redacted *per diem* pricing information from the documents

it produced.  *See*, *e.g.*, Second Raher Decl. (docket #35), Ex. O (redacted copy of the contract

pricing schedule for which BOP withheld under Exemption 4).

      Now BOP has now filed a supplemental declaration from Mr. Nace explaining that it

releases *per diem* information and only withholds "a contractor's pricing structure, such as

salaries, expenses, etc."  Second Nace Decl. (docket #241), ¶ 3.  That position is consistent with

emails recently produced by BOP to Raher in which Mr. Nace acknowledged on May 25, 2006,

that the *per diem* prices for the first four years of the CAR-5 contract "is public information."

Raher Decl. (docket #232), ¶ 1, Ex. 1.  However, that distinction was far from clear when BOP

opposed Raher's summary judgment motion.

      The FOIA embodies "a strong presumption in favor of disclosure that must be indulged

not only by the courts, but as well by the agency in its initial determination whether to disclose."

*United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus., Local 598 v.

Dep't of the Army, Corps of Eng'rs*, 841 F2d 1459, 1463 (9th Cir 1988), *abrogated on other

grounds by United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 US

749, 771 (1989).  To properly apply this presumption, an agency must search for legal authority

supporting its withholdings, consider whether contrary authority exists, and explain to the

requester and the court the basis for the withholding.  *Id*.  For whatever reason, BOP apparently

relied on its two primary submitters (CCA and GEO Group) to supply reasons for withholding

information under Exemption 4 and never thoughtfully re-examined its position in response to the evidence and arguments made by Raher.  As noted by this court when denying BOP's motion for summary judgment, the first Vaughn index did not provide sufficient justification or explanation to adequately analyze the applicability of Exemptions 2 and 4.  Opinion & Order (docket #48), p. 23.  The additional evidence submitted by BOP in response did not cure this problem, and BOP violated FOIA's segregability requirement by withholding entire documents (including tables of contents) merely because parts of them contained pricing information.

Given the circumstances of this case, this court concludes that BOP did not have a reasonable basis for withholding documents under Exemption 4.  Accordingly, Raher is entitled to an award of his expert witness fees.

## IV.    Appropriateness of Interim Award

District courts have the discretion to award interim fees under FOIA prior to a final adjudication.  *Rosenfeld v. United States*, 859 F2d 717, 725 (9th Cir 1988).   In considering a motion for an interim award, courts should consider the following four factors:  (1) the "degree of hardship" that would result from delaying an award; (2) "whether there is unreasonable delay on the government's part;" (3) "the length of time the case has been pending;" and (4) "the period of time likely to be required before the litigation is concluded."  *Powell v. United States Dep't of Justice*, 569 F Supp 1192, 1200 (ND Cal 1983).  Applying these factors, an interim award to Raher is appropriate.

With respect to the first factor, Raher has submitted evidence of hardship.  Of the $19,620.00 billed by ECONorthwest, Raher has paid $10,000.00, leaving a balance due of $9,620.00 which is accruing interest at the rate of 1% a month, with a current interest balance of $1,773.00.  Ward Decl. (docket #230), ¶¶ 3-4.  To pay ECONorthwest, 18 individual and two

non-profit organizations loaned $5,150.00 to Raher interest free. Raher Decl., ¶ 2. Raher

borrowed the remainder from a home equity line of credit, secured by his primary residence, at a

4% interest rate. *Id, ¶ 3*. The continued delay of final payment to ECONorthwest with accruing

interest and the outstanding loans with accruing interest work a hardship to Raher.

      Regarding the second factor, BOP asserts that it has not unreasonably delayed this

lawsuit, pointing out that it has become exceedingly complex with production of more than

15,000 pages of documents to Raher. However, throughout this litigation, BOP has been slow to

comply with this court's orders and often unable to answer questions posed during court-ordered

conferences. Raher also has consistently complained that BOP either has not answered his

attempts to negotiate or has ignored his informal requests for information (necessitating more

cumbersome formal discovery). BOP no doubt has many other more important matters to

manage, but its refusal or inability to communicate or cooperate with Raher and the court has

unreasonably prolonged these proceedings.

      The third factor, the length of time the case has been pending, also favors an award. This

case was filed on May 13, 2009, and has now entered its fourth year.

      The fourth factor is indeterminate given the pending unresolved issues.

      Therefore, an interim fee award is justified.

## V.    <u>Amount of Award</u>

      BOP's primary objection to Raher's motion is the lack of evidence that the requested

expert witness fee is reasonable. ECONorthwest employees spent a total of 86.75 hours

rendering services in connection with this case. MacMullan Decl. (docket #246), ¶¶ 4-6, Ex. 2.

The bulk of this time was billed by Dr. Bryce Ward, whose hourly rate at the time was $250.00.

*Id*, ¶ 4. Ed MacMullan, a senior economist, billed 15.75 hours at an hourly rate of $185.00. *Id*,

¶ 5.  ECONorthwest principal E. Whitelaw billed 0.75 hours at $425.00 per hour, and employees T. Souhlas and A. Kenny billed a combined total of 7 hours at $95.00 and $65.00 per hour, respectively.  *Id*, ¶ 6.  The total amount billed for their services is $19,620.00.  Raher seeks an award of $21,393.00, which includes $1,773.00 in interest charged by ECONorthwest pursuant to the terms of its contract with Raher.  MacMullan Decl., Ex. 1.

BOP does not object to the $250.00 hourly rate of Dr. Ward.  However, BOP objects to the amount of his time as unreasonable.   Dr. Ward billed a total of 63 hours for preparing his 19-page declaration.   His time entries contain only general descriptions, such as "Information Search," "Analysis/Review Documents," and "Report/Documentation Preparation."  As a result, BOP complains that it is not possible to determine whether the work he performed was reasonable.  Raher responds that due to a lack of access to the withheld information, Dr. Ward was required to survey the private prison industry through general literature, compare that information to BOP's arguments, and draw conclusions based on theoretical models.  Given that challenge, the amount of hours billed by Dr. Ward is reasonable.

BOP also objects to the $2,913.00 for work performed by Mr. MacMullan, noting his undergraduate degree in soil science, master's degree in agricultural economics and international agricultural development, and representative projects unrelated to the withholding of Exemption 4 information in this case.  However, Mr. MacMullan's resume reveals that he has been a senior economist at ECONorthwest since 1990 and has participated in the economic analysis of a wide variety of projects over the years.  MacMullan Decl., Ex. 3.  He is clearly qualified to assist in performing the economic analysis required by this case.  BOP also complains that his time entries also are too general to identify the specific work he performed.   Again, given the nature

of the work performed and the number of hours he billed, this court concludes that his time is reasonable.

**VI.**    **FRCP 56(h) Sanction**

Raher also argues, in the alternative, that the court should impose sanctions under FRCP 56(h) because Mr. Nace's declaration was submitted in bad faith.  Because this court concludes that Raher is entitled to an interim award of his expert witness fees, it need not address this alternative argument.

**ORDER**

Plaintiff's Motion for Interim Fee Award (docket #229) is GRANTED in the sum of $21,393.00.

DATED January 2, 2013.

s/ Janice M. Stewart
_____
Janice M. Stewart
United States Magistrate Judge